IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUCY S.,

       Plaintiff,

v.

ANDREW M. SAUL,
Acting Commissioner of
Social Security,

       Defendant.

Case No. 18-cv-6869

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Lucy S.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. Lucy asks the Court to reverse and remand the ALJ's decision, and the Commissioner moves for its affirmance. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. BACKGROUND

Lucy was diagnosed with Multiple Sclerosis (MS) when she was 19 years old. (R. 999). Despite the diagnosis, Lucy worked as an MRI technologist for 14 years. *Id*. Lucy's career ended in July 2015. *Id.* at 609. She was helping move a patient when her back gave out with a "pop." *Id*. The medical record in this case indicates that Lucy has experienced numerous symptoms in connection with her back injury and MS, including: lower back pain, right leg weakness, double-vision, and fatigue. *See, e.g.*, *id.* at 431, 872, 876, 907, 1186, 1292. The record likewise indicates

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

that Lucy has been frequently examined and has undergone several treatments, such as: back injections, physical therapy, and chemotherapy. *See, e.g.*, *id.* at 622, 775-79, 1202.

Lucy filed applications for disability benefits in September 2015, alleging disability beginning July 4, 2015. (R. 239). Lucy's claim was initially denied on April 8, 2016, and upon reconsideration on June 7, 2016. *Id*. at 163-66, 168-70. Upon Lucy's written request for a hearing, she appeared and testified at a hearing held on August 2, 2017 before ALJ Lana Johnson. *Id.* at 83. The ALJ also heard testimony from a medical expert, Dr. Sai Nimmagadda, and a vocational expert, Kari Seaver. *Id.* at 112-133.

On February 20, 2018, the ALJ issued a decision denying Lucy's application for disability benefits. (R. 76). The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520. At step one, the ALJ found that Lucy had not engaged in substantial gainful activity since July 4, 2015, the alleged onset date. *Id.* at 62. At step two, the ALJ found that Lucy had the severe impairments of relapsing and remitting Multiple Sclerosis with right sided leg weakness and double vision; degenerative disc disease of the lumbar spine and cervical spine; and migraines. *Id*. At step three, the ALJ determined that Lucy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id.* at 66.

The ALJ then concluded that Lucy retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she:

> can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally push and pull with the lower right extremity. She must avoid exposure to wetness; unprotected heights; dangerous, heavy, moving machinery; and commercial driving. She is able to avoid ordinary hazards in a workplace, such as boxes on

>the floor. She can occasionally read a computer screen and fine print.

(R. 67). Based on this RFC, the ALJ determined at step four that Lucy could not perform her past relevant work as an MRI technologist. *Id.* at 74. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Lucy could perform. *Id.* at 75. Specifically, the ALJ found Lucy could work as a sorter, assembler, or packer. *Id.* Because of this determination, the ALJ found that Lucy was not disabled. *Id.* The Appeals Council denied Lucy's request for review on August 20, 2018, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a

determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

The ALJ found Lucy not disabled at step five of the sequential analysis because she retains the RFC to perform other work that exists in significant numbers in the national economy. Lucy argues that the ALJ erred in weighing the medical opinion evidence. Specifically, Lucy argues that the ALJ erred in giving little weight to her treating orthopedist, Dr. Alan McCall, whose opinion "is corroborated within the purview of 20 CFR Section 404.1527(c)(2)." Doc. [18] at 12. According to Lucy, the ALJ ignored Dr. McCall's opinion that Lucy could not perform any job requiring lifting more than five pounds. *Id.* The Court agrees that the ALJ failed to properly weigh the opinion of Dr. McCall in this case. Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.[2]

The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 874, 874 n.1 (7th Cir. 2018) (for claims filed before March

---

[2] Because these errors requires remand, the Court does not address Lucy's other arguments.

27, 2017, an ALJ "should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record."). An ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotation marks and citations omitted); *see also Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). Those reasons must be "supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citation omitted); *see* 20 C.F.R. § 404.1527(c).

The record indicates that Dr. McCall is an orthopedic specialist who began treating Lucy at Northwest Orthopaedics & Sports Medicine on November 27, 2015. (R. 962-64). At that time, Lucy presented to Dr. McCall with severe, constant low back pain. *Id.* at 963. Dr. McCall conducted a physical examination, reviewed diagnostic imaging, and assessed Lucy as having a back strain and degeneration of lumbar or lumbosacral intervertebral disc. *Id.* In Dr. McCall's initial treatment plan for Lucy, he prescribed physical therapy and stated that Lucy may consult with Dr. D'Souza about the possibility of an epidural steroid injection. *Id.* He further observed that Lucy was not working due to her constant pain, but that "[s]he could perform sedentary activities if such were available for her." *Id.* After that initial appointment, Dr. McCall saw Lucy on at least eight other occasions, with Lucy's most recent appointment documented in the record occurring in August 2016. *Id.* at 952-53, 954-55, 958-59, 960-61, 1015-16, 1017-18, 1234-35,

5

1340-41. His treatment of Lucy included conducting physical examinations, referring Lucy to physical therapy, monitoring her physical therapy progress, ordering and reviewing diagnostic imaging, and prescribing pain medication. *See, e.g.*, *id.* at 952-53, 962-64, 955, 972.

Dr. McCall's treatment records indicate that Lucy's condition initially seemed to improve. For instance, on January 20, 2016, Lucy presented to Dr. McCall without any significant pain in her back or her right leg. (R. 958). After conducting a physical examination, Dr. McCall noted that Lucy would be returning to work with no duty restrictions on February 1, 2016, concluding that Lucy had reached her maximum medical improvement for her back injury. *Id.* at 959. But on February 17, 2016, Lucy returned to Dr. McCall's office, presenting with right calf pain and severe lower back pain. *Id.* at 954. Dr. McCall's general examination notes included his assessments that Lucy was "in some distress" and that she had "antalgic gait favoring her right leg." *Id.* In his treatment plan, Dr. McCall noted that Lucy had a "worse clinical presentation" than seen in past examinations. *Id.* He further ordered an MRI and gave her a note stating that she was "unable to work until further notice." *Id.* at 955. In a follow-up appointment on February 24, 2016, Dr. McCall reviewed the recently-ordered MRI, which he interpreted as showing no changes "at L4, 5 and L5, S1," and more prominent "disc herniation L2, 3." *Id.* at 952. Again, Lucy was given a note "reflecting her inability to work." *Id.* at 953.

Dr. McCall ordered that Lucy be off work generally, without more specification, until June 2016. On June 8, 2016, Dr. McCall conducted another physical examination of Lucy and discussed her back pain, which appeared "to be worsened with activity and improved with rest." (R. 1234). Dr. McCall also discussed with Lucy working in a sedentary occupation that did not require lifting. *Id.* In his treatment plan, he wrote: "I am uncertain as to how long this period of disability will persist . . . Given a note stating that she may return to work if a sedentary occupation

was available for her that did not require lifting. She may not return to an occupation which requires lifting over 5 lbs." *Id.* at 1235. The longevity of Dr. McCall's five-pound restriction is unclear. In the final Dr. McCall treatment notes in the record from August 26, 2016, Dr. McCall states simply that "[s]he is unable to work as an MRI tech because she is unable to lift patients." *Id.* at 1340.

In the ALJ's decision, she stated that she "considered the opinion of Alan McCall, M.D.," but gave the opinion "little weight, as it was somewhat consistent with the record." (R. 73). The ALJ apparently interpreted the Dr. McCall medical records as representing a single opinion that Lucy was "unable to return to work as an MRI tech because she was unable to lift patients." *Id.* In support of that conclusion, the ALJ cited to Dr. McCall's progress notes from August 26, 2016. *Id.*; *see id.* at 1340. The ALJ next acknowledged that "[i]maging of the claimant show findings consistent with multiple sclerosis and spinal issues which would produce limitations that would prevent the claimant from engaging in heavy or medium exertional work." *Id.* at 73. However, the ALJ discounted Dr. McCall because "Dr. McCall does not state the most the claimant could do, which means his opinion is not instructive on the claimant's functional limitations." *Id.* The ALJ then stated that physical examinations show that Lucy "should at least be able to perform sedentary work," citing to various documents in the record. *Id.* Finally, the ALJ discounted Dr. McCall's opinion because "determinations as to the ability to return to work are reserved to the Commissioner." *Id.*

Lucy argues that the ALJ was incorrect in stating that Dr. McCall did not state the most that Lucy could do because Dr. McCall opined that Lucy could not perform any job that required lifting of more than five pounds. Doc. [18] at 12. According to Lucy, the ALJ was either unaware of Dr. McCall's five-pound lifting restriction, or ignored it. *Id.*

Because Dr. McCall's five-pound lifting restriction is an opinion from a treating source, it is entitled to controlling weight, so long as the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). The treating physician's opinion need not be "consistent" with the record, just "not inconsistent." *Ynocencio v. Barnhart*, 300 F. Supp. 2d 646, 657 (N.D. Ill. 2004). "This is not a matter of mere semantics. The 'not inconsistent' standard presumes that the treating physician's opinion is predominate and requires the ALJ to search the record for inconsistent evidence in order to give the treating source's opinion less than controlling weight." *Id.*

Here, Dr. McCall's five-pound lifting restriction is well-supported by medically acceptable techniques. Significantly, Dr. McCall rendered his opinion after reviewing an MRI of Lucy's lumbar spine, which another doctor interpreted as indicating Lucy had redemonstration of a posterior disc protrusion at the L4-5 level, redemonstration of a broad-based disc protrusion at the L5-S1 level, mild degenerative disc disease at the L2-3 level, and a redemonstrated heterogeneous signal within the conus, consistent with a history of demyelination. (R. 1236-37, 1260-61). Additionally, Dr. McCall conducted physical examinations which at times showed Lucy to have sacroiliac area tenderness, sacroiliac joint pain, antalgic gait, and tightness of the right Achilles tendon. *See, e.g.*, *id.* at 1258, 1262, 1271. Dr. McCall also referred Lucy to physical therapy and monitored her progress. Dr. McCall's treatment records from June 2016—when he formed his five-pound lifting restriction opinion—included copies of Lucy's physical therapy progress from December 2015 to April 2016. *Id.* at 1240-55. Those records indicated that Lucy had good days and bad days with physical therapy. At one point, Lucy was able to squat and lift around 20 pounds, whereas in a physical therapy session after attempting to return to work in February 2016,

Lucy experienced tightness and pain severe enough that physical therapy was ineffectual at relieving pain, during which time Lucy opted not to participate in physical therapy. *Id.* at 1240, 1243-44. After coupling these findings with Lucy's subjective complaints of pain, Dr. McCall issued a diagnosis and opinion regarding Lucy's ability to lift. Dr. McCall's findings are supported by medically acceptable techniques.

Dr. McCall's opinion is likewise not inconsistent with other substantial evidence in the record. When weighing the opinion of Dr. McCall, the ALJ merely hinted at inconsistency when she concluded that physical examinations showed that Lucy should at least be able to perform sedentary work, (R. 73), which, under the regulations, could require the lifting of up to ten pounds. 20 C.F.R. § 404.1567(a). In support of that conclusion, the ALJ cited to various treatment records and referred back to her earlier discussion of those same records. *Id.* In that earlier discussion, the ALJ described the same cited treatment records as follows: "The physical examination[s] routinely show that the claimant has intact senses, 5/5 strength in her extremities other than right leg, negative straight leg raising, and normal gait without the need of an assistive device indicating she can at least perform the exertional requirements of sedentary work." *Id.* at 71. Yet, the physical examinations cited by the ALJ are not inconsistent with Dr. McCall's lifting restriction.

As an initial matter, it is not clear how the cited physical examinations are even probative to Lucy's lifting abilities. For instance, some of the physical examinations cited by the ALJ did not even test for upper extremity strength. (R. 630, 651, 692-93, 711). Even if each physical examination showed that Lucy had upper extremity strength at the time of her examination, it does not necessarily follow that Dr. McCall's lifting opinion—based on his treatment relationship, physical examinations, and review of Lucy's physical therapy progress—is inconsistent with those examinations. Indeed many of the professionals conducting the cited physical examinations

9

showing Lucy's intact strength went on to diagnose Lucy with serious medical conditions that could impact her ability to perform a job that required lifting. As an example, the ALJ cites the March 21, 2016 examination conducted by Dr. Ramesh Kharwadkar, in which Dr. Kharwadkar's physical examination shows intact strength and sensation. *Id.* at 73, 1005-06. Dr. Kharwadkar's clinical impressions nevertheless state that Lucy has degenerative disc disease, paracentral disc protrusion, posterior disc bulge, facet arthropathy, chromophobe adenoma of the pituitary, and Multiple Sclerosis. *Id.* at 1006-07. The ALJ similarly cited to Lucy's chiropractor's physical examination from January 2017, which showed Lucy as exhibiting some 4/5 muscle strength. *Id.* at 1478. However, even after conducting that physical examination (and an examination showing Lucy with 5/5 strength in June 2017), the chiropractor concluded in July 2017 that Lucy could only lift 5-10 pounds occasionally, and only if a specific position was used. *Id.* at 1483. The physical examinations cited by the ALJ are not inconsistent with Dr. McCall's opinion. The ALJ's articulation of inconsistency therefore fails to persuade the Court that Dr. McCall's opinion is inconsistent with substantial evidence in the record. *See Ynocencio*, 300 F. Supp. 2d at 657 (ALJ must search the record for inconsistent evidence in order to give treating source's opinion less than controlling weight); *Cyracus v. Colvin*, No. 15-C-172, 2016 WL 865289, at *4 (E.D. Wis. Mar. 2, 2016) (holding ALJ needed "exceptionally strong evidence to the contrary" to overcome opinion of treating rheumatologist).

Because Dr. McCall's opinion is supported by medically acceptable practices and is not inconsistent with substantial evidence in the record, the ALJ erred by not giving controlling weight to Dr. McCall's opinion that Lucy could not perform at a job that required lifting more than five pounds.

The Court further finds that even if substantial evidence in the record supported the ALJ's decision to ignore or reject Dr. McCall's opinion as to Lucy's lifting abilities, the ALJ erred by failing to address the treating physician regulatory factors. Because the ALJ did not give controlling weight to any of Dr. McCall's opinions, she had to "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 561; *see* 20 C.F.R. § 404.1527(c). An ALJ's failure to explicitly apply the checklist can provide a basis for remand. *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("in addition to summarizing [the treating physician's] visits and describing their treatment notes, the ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to their opinions"); *Campbell*, 627 F.3d at 308 ("the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (remanding where the ALJ's decision "said nothing regarding this required checklist of factors."); *Wallace v. Colvin*, 193 F. Supp. 3d 939, 947 (N.D. Ill. 2016) ("the ALJ did not explicitly apply the checklist. In this Court's view, that failure alone is a ground for a remand.").

Here, the ALJ did not appropriately address each of the checklist's factors. To begin, the ALJ failed to consider the nature and extent of the treatment relationship. Under 20 CFR § 404.1527(c)(2)(ii), the ALJ "will look at" the treatment that the treating source provided and the type of examinations and testing that the treating source has performed or ordered from specialists. The regulation explains by example that an ophthalmologist who merely *notices* neck pain during eye examinations will be given less weight than that of another physician who actually treated the patient's neck pain. *Id.* Here, the ALJ did not mention any techniques or exams conducted by Dr.

11

McCall, nor the timespan of his treating relationship with Lucy. *See Jennifer C. v. Saul*, No. 18 C 1243, 2019 WL 4345344, at *5 (N.D. Ill. Sept. 12, 2019) (holding ALJ discussed nature and extent of the treatment relationship by describing the timespan of the relationship, as well as the treating physician's use of "myofascial release techniques"). At the very least, Dr. McCall's treatment records indicate that, for nearly a year, he conducted physical examinations, referred Lucy to physical therapy, reviewed her physical therapy progress, ordered and reviewed diagnostic imaging, and prescribed pain medication. (R. 952-53, 955, 962-64, 972). Without discussion or comment by the ALJ on these matters, the Court cannot determine whether the ALJ accounted for the nature or extent of Dr. McCall's treatment relationship with Lucy when weighing his opinions.

Nor did the ALJ expressly weigh the frequency of Dr. McCall's examinations under 20 CFR § 404.1527(c)(2)(i). The regulation recognizes this factor's importance as to the weight of a treating source's medical opinion. Under 20 CFR § 404.1527(c)(2)(i), "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." And that whenever "the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source." *Id.* Here, it is not clear whether the ALJ accounted for the frequency of Dr. McCall's treatment relationship because the ALJ did not state that she had recognized that the treatment relationship spanned at least nine visits. (*See* R. 952-53, 954-55, 958-59, 960-61, 962-64, 1015-16, 1017-18, 1234-35, 1340-41).

The ALJ likewise failed to expressly consider Dr. McCall's specialty as an orthopedist. A treating physician's specialty is significant under the regulations. According to 20 CFR § 404.1527(c)(5), the administration "generally give[s] more weight to the medical opinion of a

specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." Because the ALJ's assessment of Dr. McCall is silent as to his specialty, the ALJ failed to minimally address the factor of specialty.

The ALJ moreover did not address the supportability of Dr. McCall's opinions. The regulations explain that supportability encompasses the preference given to a medical source that "presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings . . . ." 20 CFR § 404.1527(c)(3). Although such objective findings exist in Dr. McCall's treatment records, as discussed above, the ALJ did not discuss them in her weighing of his opinions. For instance, the ALJ did not discuss Dr. McCall's physical examination results, nor his discussions of diagnostic imaging. As a result, the ALJ failed to address the supportability factor.

The ALJ did assess, albeit briefly, the consistency of Dr. McCall's opinions. Consistency is directed at the fit of the medical source's opinion in the context of the record as a whole. 20 CFR § 404.1527(c)(4). Here, the ALJ acknowledged that diagnostic imaging was consistent with Dr. McCall's opinion that Lucy could not return to work as an MRI technologist but stated that "physical examinations show that the claimant should at least be able to perform sedentary work." (R. 73). Therefore, of the required treating physician factors, the ALJ only touched on consistency. The ALJ's failure to address the other treating physician factors constitutes error.

In sum, the ALJ erred by not giving controlling weight to Dr. McCall's opinion that Lucy could not perform a job that required lifting of over five pounds because the opinion came from a treating source, is well-supported by medically acceptable practices, and is not inconsistent with other substantial evidence in the record. The ALJ also erred in failing to address the treating physician regulatory factors.

The Commissioner argues that the ALJ's failure to discuss Dr. McCall's lifting restriction was harmless, as physical therapy records discussed by the ALJ indicated that Lucy could lift more weight. Doc. [21] at 9-10. However, the physical therapy records discussed by the ALJ are records that came before Dr. McCall's June 2016 lifting opinion. (R. 69-71, 778-79, 914, 918, 927, 942, 1175). Moreover, the record indicates that Dr. McCall referred Lucy to physical therapy and reviewed Lucy's recent physical therapy records as part of his June 2016 opinion that Lucy could not lift more than five pounds as part of her employment. *Id.* at 1240-55. Had the ALJ properly assessed Dr. McCall's treatment relationship with Lucy per the regulatory factors, she might have acknowledged Dr. McCall's lifting restriction, and given it more weight. In any event, the ALJ selected an RFC that was less restrictive than Dr. McCall's opinion. As a result, the ALJ's error in weighing Dr. McCall's opinion is not harmless. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (holding ALJ's error in giving little weight to treating physician not harmless where outcome was not foreordained, since at the very least, ALJ formulated RFC without including treating physician's most recent opinions).

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [17] is granted, and the Commissioner's Motion for Summary Judgment [20] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: January 22, 2020

_____

Sunil R. Harjani
United States Magistrate Judge